UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

-------------------------------------------------------

NOAH HANSARD

          Plaintiffs,

    v.

THE BOARD OF SUPERVISORS FOR
THE UNIVERSITY OF LOUISIANA
SYSTEM, as the public entity responsible for
the University of New Orleans and
RICHARD GALLOT, JR. in his official
capacity as President of University of
Louisiana System.

          Defendants.

-------------------------------------------------------

**CASE NO.:**

**Judge:**

**Magistrate:**

## <u>COMPLAINT</u>

Plaintiff NOAH HANSARD (hereinafter referred to as "MR. HANSARD"), by and through undersigned counsel, hereby files this Complaint and sues THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM (hereinafter the "BOARD") and RICHARD GALLOT, JR., (hereinafter "GALLOT") in his official capacity as President of University of Louisiana System (hereinafter, collectively, "DEFENDANTS"). Plaintiff seeks injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Americans with Disabilities Act" or "ADA") against defendant GALLOT; injunctive and declaratory relief, damages, and attorneys' fees and costs pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. ("Rehabilitation Act") against the BOARD; and injunctive and declaratory relief, attorneys' fees and costs under the Rehabilitation Act against GALLOT.

## JURISDICTION AND PARTIES

1.  This is an action for injunctive and declaratory relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., and damages and injunctive and declaratory relief pursuant Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.[1]

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property which is the subject of this action is in Orleans Parish, Louisiana.

3.  MR. HANSARD is a person of the age of majority and a citizen of the State of Louisiana.

4.  MR. HANSARD resides in Jefferson Parish, Louisiana.

5.  MR. HANSARD is a qualified individual with a disability under the ADA and RA.

6.  MR. HANSARD has paraplegia because of a gunshot wound that he suffered approximately two years ago.

7.  As a result of his disability, MR. HANSARD requires a wheelchair mobility.

8.  Additionally, due to his disability, MR. HANSARD has been battling pressure ulcers and sepsis, which are exacerbated when MR. HANSARD has to transfer repeatedly.

9.  Therefore, as he continues to deal with the pressure ulcers and sepsis, and until those manifestations of his disability are managed, MR. HANSARD requires an accommodation of attending lectures or in-person events remotely via computer ("Remote Attendance").

10. Attendant to said accommodation is MR. HANSARD's need to obtain the same information

---

[1] Mr. HANSARD seeks both compensatory and nominal damages pursuant to the Rehabilitation Act of 1973. It is Mr. HANSARD's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in their favor against the BOARD, regardless of the amount, would deter the BOARD from discriminating against individuals with disabilities in the future.

and class materials via Remote Attendance.

11. To the extent Defendants do not provide the materials during Remote Attendance, a necessary supplement is for Defendants' professors to provide the same information after the class.

12. Due to his disability, MR. HANSARD is substantially impaired in several major life activities and requires accommodations within educational environments.

13. Upon information and belief, the BOARD is the political entity responsible for owning, administering, operating, and/or maintaining the University of Louisiana System, which includes the University of New Orleans.

14. Upon information and belief, Defendant MR. GALLOT is the President of University of Louisiana System and is responsible for ensuring that the colleges managed and operated by the BOARD comply with state and federal laws. MR. GALLOT can take steps to ensure that employees within the system comport with Court Orders, including by directing Orders to said individuals, taking remedial action against said individuals, and using the monetary and policing powers available to the BOARD to ensure compliance.

15. MR. GALLOT is sued in his official capacity only, pursuant to the doctrine of *Ex parte Young*.

16. The University of New Orleans is a public facility which is open to members of the public, including MR. HANSARD.

17. DEFENDANTS are responsible for complying with the obligations of the ADA and RA.

18. All events giving rise to this lawsuit occurred in the Eastern District of Louisiana, Orleans Parish, Louisiana.

### STATEMENT OF FACTS

19. MR. HANSARD is a student with disabilities, including paraplegia.

20. Due to his disabilities, MR. HANSARD is substantially impaired in several major life

activities and requires accommodations within educational environments. For his mobility-related disabilities, MR. HANSARD requires accommodations in the form of a physically accessible campus and ability to attend classes virtually.

21. In August of 2018, MR. HANSARD enrolled at the University of New Orleans ("UNO"). MR. HANSARD was majoring in Naval Architecture and Marine Engineering.

22. On August 21, 2022, while taking a walk, MR. HANSARD was a victim of senseless violence in New Orleans, Louisiana. MR. HANSARD was shot and left paralyzed from the midsection down.

23. MR. HANSARD was forced to be away from his studies at UNO for a period of time while he stabilized from the injury he experienced.

24. In the Fall of 2023, MR. HANSARD re-commenced his studies in the Naval Architecture and Marine Engineering program.

25. Unfortunately, while at UNO during the Fall of 2023, MR. HANSARD experienced disability-related discrimination, as well as encountering physical barriers to access.

## NAME 3150 CLASS – FAILURE TO ACCOMMODATE

26. During the Fall of 2023 semester, MR. HANSARD alerted the employees of UNO of his disabilities.

27. In the Fall of 2023, MR. HANSARD enrolled in the class: "NAME 3150, Ship Resistance and Propulsion," which was taught by Professor Lothar Birk.

28.  MR. HANSARD provided Professor Birk with notice that he was disabled, both in writing and verbally.

29. On September 8, 2023, Professor Birk signed a University of New Orleans Student Accommodation Agreement, which had been completed by the Office of Accessibility

Services. One of the accommodations provided for on this form was "consideration for disability-related absences."

30. In terms of implementation of this accommodation, MR. HANSARD explained to Professor Birk that he would need to attend classes via Zoom or video-based method due to his paraplegia and attendant ulcers and sepsis, which are exacerbated when MR. HANSARD has to transfer repeatedly. Repeated transfers would be required for MR. HANSARD to get from his home and to a physical classroom.

31. Additionally, at times, MR. HANSARD would unfortunately have to attend classes from a hospital room as MR. HANSARD was still dealing with recovery related to his disability.

32. In accordance with the Student Accommodation Agreement, Professor Birk agreed to permit MR. HANSARD to attend classes via Remote Attendance.

33. While a Zoom link was made available to MR. HANSARD for Remote Attendance, the quality of the audio and video was poor and would sometimes fail completely. Additionally, Professor Birk would not aim the camera so that the information written on the white board was legible. Further, at times it was difficult for MR. HANSARD to hear when Professor Birk was not speaking clearly and/or his voice was not being picked up by the computer's microphone.

34. Given the technological issues, whiteboard issues, and audio clarity issues, MR. HANSARD requested that Professor Birk upload recordings of the lectures. This would allow him to review sections of the lessons where technical issues in the transmission of the video occurred in order to better decipher the lessons.

35. On October 8, 2023, MR. HANSARD requested that Professor Birk upload lectures 6, 7 & 8.

36. MR. HANSARD received no response from Dr. Birk and did not receive the lecture recordings.

37. On November, MR. HANSARD advised Professor Birk that the audio had cut out and MR. HANSARD requested that Professor Birk post the recording of the lecture so MR. HANSARD could watch it.

38. MR. HANSARD received absolutely no response from Dr. Birk and did not receive the lecture recordings.

39. Remote Attendance was a reasonable accommodation which Professor Birk agreed to provide to MR. HANSARD. When Professor Birk was informed that he failed to provide the necessary accommodation, Professor Birk had an obligation to ensure that MR. HANSARD was accommodated through other means. Under these circumstances, posting the lecture recordings for further review would have been a reasonable alternative accommodation.

40. On November 12, 2023, MR. HANSARD sent an email to Marty Manchester D'Aunoy, academic advisor, and Nikolas Xiros, department head of the Naval Architecture and Marine Engineering program, concerning several of the aforementioned issues MR. HANSARD had been having in Professor Birk's class regarding Remote Attendance.

41. One of the issues raised by MR. HANSARD in the November 12 email was Professor Birk's failure to provide the recordings of the lectures, or even acknowledge MR. HANSARD's email requests.

42. In response, on November 13, 2023, Professor Birk admitted that the technology and setup being used to accommodate MR. HANSARD had been failing, stating "Unfortunately our classroom technology is not great and sometimes fails altogether. The NAME Computer Lab where I hold most of the recitations is not setup for streaming at all."

43. In regard to MR. HANSARD's request for remedial accommodations in the form of uploading the Zoom recordings so that he could review the lessons, Professor Birk claimed that he was

too busy, stating "I simply do not have the time to search and upload the Zoom recordings."

44. By and through the email above, Professor Birk refused to provide a remedial accommodation to MR. HANSARD that was necessary given the failure of the technology relied upon UNO and Professor Birk.

45. The department Chair of the NAME program received Professor Birk's November 13th email in which he refused to accommodate MR. HANSARD. No action was taken by the department Chair to remedy the situation, and Professor Birk—as he said in his email—did not provide the requested recordings.

46. At no point was MR. HANSARD advised by Professor Birk or the Chair of the NAME program that it would have been unfair other students for MR. HANSARD to receive the recordings, or that it would have violated any departmental policies. The only reason MR. HANSARD was ever told he would not get the recordings was that Professor Birk was "too busy."

47. Upon information and belief, Professor Birk never sought assistance from a colleague or subordinate to aid with locating and uploading the Zoom recordings, if his schedule was so occupied that he could not locate a small segment of time to accommodate MR. HANSARD.

48. Upon information and belief, Professor Birk was not so occupied that he could not find a small segment of time to upload the Zoom recordings. As such, this excuse was merely a pretext for discrimination.

49. Without the ability to clearly hear the audio or see the whiteboard in real time, and without the ability to review the recordings after the class, MR. HANSARD fell behind in the NAME 3150 class.

50. MR. HANSARD fell behind in the NAME 3150 class despite working to complete all

assignments and attend all examinations and quizzes. Ultimately, MR. HANSARD was assigned a failing grade of a "D" in the NAME 3150 class.

51. Upon information and belief, MR. HANSARD's failing grade in the NAME 3150 class was caused, in full or in part, because of Professor Birk's failure to adequately accommodate MR. HANSARD and his failure to accommodate MR. HANSARD when the original accommodation he was supposed to be providing was clearly insufficient.

52. Furthermore, Professor Birk's failure to provide a reasonable accommodation is evidenced by his failure to engage in a good faith interactive dialogue with MR. HANSARD. Professor Birk failed to respond to emails sent by MR. HANSARD, and on November 13, 2023, when called out by MR. HANSARD, Professor Birk simply retorted that he was "too busy" to accommodate MR. HANSARD.

## NAME 3150 CLASS – IMPACT ON MR. HANSARD

53. As a result of his failing the NAME 3150 class, MR. HANSARD's academic career has been impeded. MR. HANSARD was unable to take NAME 3131 Marine Engines course because he had not passed the prerequisite course NAME 3150.

54. As such, in the Spring of 2024, MR. HANSARD had to choose between taking an academic break or auditing the NAME 3131 course. MR. HANSARD decided to audit the NAME 3131 course. Based on the audit grades he received, MR. HANSARD would have passed the course with distinction. However, because he audited the class, the grade he earned was not counted.

55. Additionally, in the Fall of 2024, MR. HANSARD was obligated to retake the NAME 3150 class. The disruption to MR. HANSARD's academic progress extended MR. HANSARD's time enrolled at UNO and has resulted in additional expense for MR. HANSARD.

56. Additionally, with a "D" on his transcript, MR. HANSARD's academic record is tarnished,

and he is less appealing to potential employers.

### UNO – PHYSICAL BARRIERS

57.   Upon information and belief, the Board develops and provides the various services and programs offered at the University of New Orleans, 2000 Lakeshore Drive, New Orleans, Louisiana 70148 (hereinafter "the Property"). The services and programs at issue in this case include but are not limited to: transportation (including walkways and parking facilities); classes; meetings; assemblies; special events; trainings; research (including libraries); and other educational and recreational programs and services.

58.   MR. HANSARD has been to the Property many times in the past. MR. HANSARD is currently enrolled as a student at UNO.

59.   While at the Property, MR. HANSARD has encountered architectural barriers while attempting to navigate the Property with his wheelchair.

60.   While at the Property, MR. HANSARD has had difficulty accessing certain areas because of the lack of accessible routes and malfunctioning automatic door openers.

61.   While at the Property, MR. HANSARD has experienced serious difficulty utilizing the services and programs offered at the Property due to architectural barriers.

62.   MR. HANSARD encountered many of the architectural barriers described herein within the year preceding the filing of the Complaint in this action.

63.   MR. HANSARD plans to and will return to the Property in the near future to utilize the programs and activities administered at the Property.

64.   MR. HANSARD fears that he will continue to experience serious difficulty at the Property due to the barriers discussed below, which still exist.

65.   The barriers discussed below deny Plaintiff meaningful access to the programs and activities

offered at the Property.

66.     The barriers discussed below are depriving MR. HANSARD of the equal opportunity to participate in, benefit from, or utilize the programs and activities offered at the Property.

67.     Upon information and belief, Defendants have discriminated against MR. HANSARD, and continue to discriminate against MR. HANSARD, in violation of the ADA/Rehabilitation Act, *inter alia* by excluding and/or denying MR. HANSARD the benefits of its services, programs, and/or activities; by failing to ensure accessible facilities within five (5) years of January 26, 1992; by failing to ensure that all portions of the Property that were constructed or altered after January 26, 1992 were made readily accessible and usable by individuals with disabilities to the maximum extent practicable; and/or by failing to maintain the accessible features at the Property in operable working condition.

68.     MR. HANSARD's visits to the Property show that the program, when viewed in its entirety, is not accessible to people with mobility-related disabilities.

69.     The physical barriers to access at the Property include, but are not limited to:

Dr. Robert A. Savoie College of Engineering Building

        a)      The designated-accessible parking spaces that serve this building lack vertical signage.

        b)      The accessible route from the designated-accessible parking spaces that serve this building contains impermissible changes in level and are cracked and in general disrepair.

        c)      Both the front entrance and the rear entrance have an impermissible gap at the doorway.

        d)      The operable parts of the telephones and emergency devices are located too high

off the finished floor.

e)    There are drinking fountains that do not contain the proper knee clearance for a wheelchair user to use.

f)    There are vending machines with operable parts located too high off the finished floor.

g)    All of the restrooms in this building contain thresholds that contain an impermissible change in level.

h)    The designated-accessible restroom located on the first floor does not contain an accessible toilet stall.

i)    The other restrooms in the facility have toilet stalls for a forward approach that is too narrow.

j)    All of the restrooms have sinks that do not have the proper insulation.

k)    The restrooms contain towel and soap dispensers that are too high off the finished floor.

l)    There are doors throughout the building that contain knobs with mechanisms that require twisting/turning.

m)    The classrooms do not contain desks appropriate for a wheelchair user.

n)    The Tow Tank is only accessible via a ladder.

o)    There are picnic tables surrounding the building that cannot accommodate wheelchair users.

p)    The sidewalks/accessible routes surrounding the building contain impermissible changes in level and wide gaps.

q)    Other mobility-related ADA barriers to be identified following a complete

inspection.

Science Building

r)      The rear designated-accessible ramp lacks handrails.

s)      There are doors throughout the building that contain knobs with mechanisms that require twisting/turning.

t)      There are drinking fountains that do not contain the proper knee clearance for a wheelchair user to use.

u)      The front designated-accessible ramp contains an improper slope and also contains non-compliant handrails.

v)      The designated-accessible unisex restroom (Room 1083) contains an improperly narrow doorway.

w)      The designated-accessible unisex restroom (Room 1083) contains doorknobs with mechanisms that require twisting/turning.

x)      The designated-accessible unisex restroom (Room 1083) lacks grab bars at the toilet.

y)      The designated-accessible unisex restroom (Room 1083) lacks insulation at the sink.

z)      The designated-accessible unisex restroom (Room 1083) lacks the necessary pull-side clearance at the entry door.

aa)      The designated-accessible unisex restroom (Room 1083) contains a locking mechanism that is located too high off the finished floor.

bb)      The designated-accessible unisex restroom (Room 1083) contains a mirror too high off the finished floor.

cc)    The designated-accessible unisex restroom (Room 1083) contains towel dispensers too high off the finished floor.

dd)    There are vending machines that are inaccessible due to the presence of a step.

ee)    The outdoor foyers are inaccessible to wheelchair users.

ff)    Other mobility-related ADA barriers to be identified following a complete inspection.

The UNO campus, generally

gg)    There are sidewalks/accessible routes throughout the campus that contain impermissible changes in level and wide gaps.

hh)    There are curb cuts throughout the campus that contain impermissible changes in level and are otherwise broken/cracked.

ii)    There are designated-accessible parking spaces that do not contain the proper sized access aisle.

jj)    There are designated-accessible parking spaces that do not contain vertical signage.

kk)    There are designated-accessible parking spaces that do not connect to a curb ramp.

ll)    Other mobility-related ADA barriers to be identified following a complete inspection.

70.    42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

71. Defendants have discriminated against MR. HANSARD by denying him full access to the services, programs, and/or activities by failing to make their facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 28 C.F.R. Part 35.101-35.190 *et. seq.*

72. Defendants have discriminated, and are continuing to discriminate, against MR. HANSARD in violation of the ADA by excluding and/or denying MR. HANSARD the full and equal benefits of its services, programs, and/or activities by failing to, inter alia, have accessible facilities. MR. HANSARD has personally encountered various of the barriers to access on the Property discussed herein.

73. 28 C.F.R. § 35.130(4) states that "[a] public entity may not, in determining the site or location of a facility, make selections – (I) [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination..." Defendants have violated this provision by providing their services, programs, and/or activities at an inaccessible facility.

74. Defendants have discriminated against MR. HANSARD by excluding him from participation in, and denying the benefits of, the services, programs, and/or activities at its Property because of MR. HANSARD's disability, all in violation of 42 U.S.C. § 12132.

75. Upon information and belief, Defendants continue to discriminate against MR. HANSARD by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise

treated differently than other individuals because of failure to remove architectural barriers.

76.     Defendants have actual and/or constructive knowledge that mobility-related accessibility issues exist at the Property.

77.     Defendants' policies and practices have a discriminatory impact on people with mobility-related disabilities.

78.     Defendants' policies and practices have a disparate impact on people with mobility-related disabilities.

79.     The harms suffered by MR. HANSARD were the foreseeable result of Defendants' actions and inactions constituting discrimination.

80.     The harms suffered by MR. HANSARD were the foreseeable result of Defendants neglecting their affirmative duty to ensure that the programs and activities offered at the Property are fully accessible to wheelchair users.

81.     Based on the facts alleged above, the Board, through its employees, intentionally discriminated against MR. HANSARD.

**EXPECTATION INTEREST AND INTENTIONAL DISCRIMINATION**

82.     Due to the lack of sufficient accommodations, MR. HANSARD has suffered embarrassment, distress, anxiety, and invasion of his civil rights. MR. HANSARD also intends to prove at trial that the lack of sufficient accommodation caused his grades to suffer. MR. HANSARD also intends to prove at trial that he suffered damages in the form of delayed academic progress, a tarnished transcript, and expense in the form of re-taking the NAME 3150 class.

83.     UNO published "Policy No. AP-OP-10.6," entitled "Americans with Disabilities Act (ADA)." This policy states which states "The University of New Orleans is fully committed to ensuring compliance with the requirements of the Americans with Disabilities Act and its Amending

Act of 2008 (collectively ADA) to include: … • Title II: Ensures qualified individuals with disabilities have equal access to the full range of programs, services, activities and facilities of the University." *See* Policy No. AP-OP-10.6, p. 1.

84. UNO's "Policy No. AP-OP-10.6" provides that an individual with a disability can engage directly with the person from whom they need the accommodation and said individual is supposed to notify the ADA Coordinator. *See* Policy No. AP-OP-10.6, p. 6 ("Upon receipt, the individual to whom an accommodation request was submitted must immediately notify the ADA Coordinator.").

85. UNO's "Policy No. AP-OP-10.6" goes on to state "Individuals with disabilities are encouraged to suggest accommodations based upon their own life and/or work experiences. Such requested accommodations will be duly considered. Nonetheless, the University of New Orleans reserves the right to select an equally effective accommodation that may be less expensive or impactful on business operations. All accommodation requests will be evaluated thoroughly and objectively on a case-by-case basis."

86. Thus, in enrolling and attend UNO, MR. HANSARD developed an expectation interest that there would be an atmosphere preventing discrimination against individuals with disabilities, enforceable standards to address discrimination against individuals with disabilities, and that UNO would provide reasonable and appropriate accommodations.

87. By and through discrimination outlined in this Complaint, and as will be shown at trial, MR. HANSARD's expectations have not been satisfied.

88. Upon information and belief, the BOARD breached its promise not to discriminate against MR. HANSARD in exchange for Federal funding under the RA.

89. Upon information and belief, the BOARD was aware that, for breaching its contract with the

Federal Government, it would be subjected to the usual contract remedies in private suits, which include MR. HANSARD's expectation interest.

90. MR. HANSARD is entitled to damages that will put him in as good a position as he would have been in had his expectation interests been satisfied by the BOARD.  Upon information and belief, due to the lack of sufficient accommodation, MR. HANSARD was not afforded an equal opportunity to engage in the services, programs, and activities offered by the BOARD.

91. Upon information and belief, MR. HANSARD was not afforded an equal opportunity to learn and participate in his courses in the same manner as individuals who do not require accommodation.

92. Upon information and belief, the BOARD was aware of MR. HANSARD's disability.

93. Upon information and belief, because of the BOARD's failure to ensure MR. HANSARD's accommodations were provided, he received services that were substandard and inferior to those provided to individuals who do not have a disability.

94. By and through the conduct of its employees, as is set forth above, the BOARD intentionally discriminated against MR. HANSARD in that MR. HANSARD gave the BOARD's employees notice of his disability, limitations, and needed accommodations; additionally, the BOARD intentionally discriminated against MR. HANSARD with deliberate indifference to his rights and to MR. HANSARD's accommodation needs; the BOARD's discrimination has caused MR. HANSARD invasion of his civil rights, financial loss, breach/violation of MR. HANSARD's expectations, and other actual damages.

## COUNT I – VIOLATION OF TITLE II OF THE AMERICANS WITH DISIBILITIES ACT SOLELY AS TO RICHARD GALLOT, JR. IN HIS OFFICIAL CAPACITY

95. MR. HANSARD realleges and reavers the Paragraphs above as if they were expressly restated herein.

96. MR. HANSARD is enrolled as a student at UNO. As is set forth above, MR. HANSARD was granted approved accommodations necessary to partake in DEFENDANTS' classes and curriculum in a manner that is equivalent to that of persons who do not have disabilities.

97. As is outlined above, the BOARD repeatedly discriminated against MR. HANSARD by failing and/or refusing to provide the accommodations necessary to ensure MR. HANSARD is able to participate in classes, study and review class material, and prepare for and take exams. As a result, MR. HANSARD has been unable to meaningfully engage in some of the educational services provided at UNO.

98. Due to the discrimination he has experienced, MR. HANSARD has suffered loss of educational opportunities, lowered grades, delayed education, stress and anxiety, and invasion of his civil rights.

99. MR. HANSARD seeks injunctive and declaratory relief and attorneys' fees and costs to redress MR. GALLOT's unlawful discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*.

100. At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, *et seq*. has been in full force and effect and has applied to MR. GALLOT's conduct.

101. At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to MR. GALLOT's conduct.

102. At all times relevant to this action, MR. HANSARD has been substantially limited in the major life activities of reading skills, writing, and spelling, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

103. THE BOARD is a public entity within the meaning of Title II of the ADA, 42 U.S.C. §

12131(1).

104. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

105. Federal regulations implementing Title II of the ADA provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

106. Federal regulations implementing Title II of the ADA further provide that "a public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

107. Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

108. The BOARD, through the actions of its employees, discriminated against MR. HANSARD,

on the basis of his disability, in violation of Title II of the ADA and its implementing regulations.

109. MR. GALLOT, as the chief executive of the BOARD, has the power and authority to end the unlawful discrimination against MR. HANSARD and this Court can issue an Order for MR. GALLOT to end the unlawful discrimination.

110. MR. HANSARD is therefore entitled to injunctive relief, as well as an award of attorneys' fees and costs (including expert expenses), pursuant to Title II of the ADA.

**CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

111. MR. HANSARD repeats and realleges all preceding paragraphs in support of this claim.

112. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to DEFENDANTS' conduct.

113. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to DEFENDANTS' conduct.

114. At all times relevant to this action, MR. HANSARD has had substantial limitations to his major life activities of reading, writing, and spelling, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

115. By and through discrimination outlined in this Complaint, and as will be shown at trial, MR. HANSARD's expectations have not been satisfied.

116. Upon information and belief, the BOARD, through its employees, breached its promise not to discriminate against MR. HANSARD in exchange for Federal funding under the RA.

117. Upon information and belief, the BOARD, through its employees, was aware that, for breaching its contract with the Federal Government, it would be subjected to the usual contract

remedies in private suits, which include MR. HANSARD's expectation interest.

118. MR. HANSARD is entitled to damages that will put him in as good a position as he would have been in had expectation interests been satisfied by DEFENDANTS.

119. The Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

> 29 U.S.C. § 794(a).

120. Upon information and belief, as set forth herein, the BOARD, through its employees, discriminated against MR. HANSARD on the basis of disability, in violation of 29 U.S.C. § 794.

121. Upon information and belief, a non-exclusive list of DEFENDANTS' violations of the Rehabilitation Act and discriminatory conduct against MR. HANSARD are evidenced by:

    A.    Denying MR. HANSARD access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered by DEFENDANTS;

    B.    By otherwise limiting MR. HANSARD in the enjoyment of the rights, privileges, advantages, and opportunities enjoyed by individuals without disabilities who receive DEFENDANTS' aids, benefits, and services;

    C.    Failing to provide reasonable accommodation to MR. HANSARD;

    D.    Excluding MR. HANSARD from participation in, and the benefits of, DEFENDANTS' services, programs, and activities as a result of DEFENDANTS failing to provide MR. HANSARD with reasonable

accommodations;

E.   Failing to remove physical to access, and thereby failing to provide program access;

F.   Failing to remove physical barriers to access, in violation of the alteration and/or new construction requirements of Title II of the ADA.

122.   Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act which MR. HANSARD is more likely than not going to encounter upon continuing to take classes at LSU Law.

123.   MR. HANSARD brings this action:

A.   To redress injuries suffered as a result of DEFENDANTS' discriminatory actions and inactions set forth herein;

B.   To reasonably avoid further and future injury as a result of DEFENDANTS' ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

C.   To ensure DEFENDANTS' services, programs, and activities are accessible as required by the relevant applications of Title II of the ADA;

D.   Remedy and cause DEFENDANTS to modify the physical barriers.

E.   To be made whole and ensure future compliance; and

F.   To reasonably avoid future ADA and Rehabilitation Act litigation involving the same DEFENDANTS and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

124.   MR HANSARD tried to resolve the issues he experienced at UNO concerning his NAME 3150 class at UNO without resorting to litigation. MR. HANSARD's efforts were

unsuccessful.

125. The BOARD, through its employees, had an opportunity to accommodate MR. HANSARD. Additionally, the BOARD has had over thirty (30) years to bring its physical campus into compliance with the ADA.

126. Despite receipt of numerous opportunities to accommodate, the BOARD, through its employees, failed to provide MR. HANSARD with needed accommodations on various occasions.

127. The BOARD, through its employees, had knowledge of MR. HANSARD's disabilities, limitations, and requested accommodations.

128. Despite knowledge of MR. HANSARD's disabilities, limitations, and requested accommodations, The BOARD, through its employees, failed to adequately accommodate MR. HANSARD. The BOARD failure to adequately accommodate MR. HANSARD when faced with his stated needs constitutes intentional discrimination.

129. As set forth above, MR. HANSARD has been denied access to, and without the relief requested herein, will continue to be denied the access to the goods, services, programs, facilities, activities, and accommodations offered by DEFENDANTS solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his disability as a result of DEFENDANTS' Rehabilitation Act violations set forth above.

130. MR. HANSARD has retained undersigned counsel for the filing and prosecution of this action, and undersigned counsel is incurring reasonable attorneys' fees, including costs and litigation expenses, in this action. MR. HANSARD is entitled to recover those attorneys' fees, costs and litigation expenses from DEFENDANTS pursuant to 29 U.S.C. §794a(b).

131. Pursuant to 29 U.S.C. §794a this Court is provided authority to grant MR. HANSARD

injunctive relief, including an order to alter the subject premises, facilities, services, activities, programs, and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; and grant MR. HANSARD compensatory damages for DEFENDANTS' discriminatory actions.

## **PRAYER FOR RELIEF**

**WHEREFORE,** MR. HANSARD respectfully pray that:

A. This Court issue a Declaratory Judgment that determines that the BOARD's policies, procedures, and practices have subjected MR. HANSARD to unlawful discrimination in violation of the ADA and RA.

B. This Court grant permanent injunctive relief to MR. HANSARD against MR. GALLOT, ordering him to take action to cause the BOARD to cease violating the statutory and regulatory requirements of the ADA and RA.

C. This Court grant permanent injunctive relief to MR. HANSARD against the BOARD ordering it to cease violating the statutory and regulatory requirements of the RA.

D. This Court issue an injunction to MR. HANSARD ordering MR. GALLOT and the BOARD:

i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against MR. HANSARD or individuals with a disability by failing to provide reasonable accommodation;

ii. to develop, implement, promulgate, and comply with a policy

requiring that students needing virtual attendance receive the same opportunity to view all information as students attending in person;

iii. to develop, implement, promulgate, and comply with a policy requiring that class lecture recordings be provided within twenty-four (24) hours of a class lecture to all individuals with disabilities who require these accommodations;

iv. to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are disabled under the ADA and the RA;

E.  To modify all physical ADA barriers to access at UNO's campus.

F.      Award to MR. HANSARD:

i.  Compensatory, nominal, and actual damages pursuant to the RA;

ii.  Reasonable attorneys' fees, costs (including expert fees), and other expenses of the suit, pursuant to the ADA and RA.

iii.  Interest on all amounts, at the highest rates and from the earliest dates allowed by law; and

iv.  Any and all other equitable or legal relief that this Court finds necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

PLAINTIFF demands a trial by jury on all issues.


Dated: September 25, 2024

Respectfully Submitted,

/s/ Andrew D. Bizer

-25-

BIZER & DEREUS
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Eva M. Kalikoff (LA # 39932)
eva@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996